**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SHANIKA GLENN, *on behalf of herself and all others similarly situated,* | ) ) ) | |
| Plaintiff, | ) ) | Judge: April M. Perry |
| v. | ) ) | Case No.  1:24-cv-08260 |
| MONTERREY SECURITY CONSULTANTS, INC., | ) ) ) | |
| Defendant. | ) ) | |

<u>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR COURT-AUTHORIZED**</u>
<u>**FAIR LABOR STANDARDS ACT OPT-IN NOTICE**</u>

## I.      INTRODUCTION

Defendant's opposition to conditional certification fails on every front. Rather than addressing the well-established legal standards governing FLSA collective actions, Defendant asks this Court to deny FLSA opt-in notice based on meritless arbitration arguments that Defendant failed to develop in their response brief.

The facts are undisputed: Plaintiff and potential collective members are subject to Defendant's common policy of excluding health and welfare payments from overtime calculations in violation of federal law. This common (and unlawful) practice easily satisfies the modest showing required for step-one notice under controlling Seventh Circuit precedent. Defendant does not challenge—and cannot challenge—that employees meeting the collective definition are similarly situated. Instead, Defendant's opposition rests entirely on two mistaken beliefs.

*First*, Defendant incorrectly argues that *Bigger v. Facebook* applies to arbitration provisions in collective bargaining agreements. It does not. *Millings v. Transdev Servs., Inc.*, No. 20 Civ. 07711, 2023 WL 6541318, at *7 (N.D. Ill. Oct. 6, 2023) (rejecting application of *Bigger* to CBA arbitration provisions). The Seventh Circuit's decision in *Bigger* governs individual arbitration agreements, not collectively bargained grievance procedures that are subject to different legal standards. *Second*, even if *Bigger* applied—and it does not—Defendant has failed to meet its evidentiary burden. Defendant offers no evidence identifying which specific employees are allegedly bound by arbitration provisions, provides no proof that any employee knowingly waived their FLSA rights, and presents no legal analysis whatsoever of whether the CBAs contain the "clear and unmistakable" language required by Supreme Court precedent to waive federal statutory rights. This failure to brief the controlling legal standard constitutes a waiver of any arbitration defense.

1

Plaintiff requests this Court authorize the issuance of notice to similarly situated hourly employees who worked over forty hours and received health and welfare payments that Defendant excluded from their overtime rates and approve Plaintiff's proposed methods of notice.

## II. ARGUMENT

### A. Plaintiff and the Potential Collective Members are Similarly Situated.

Defendant's argument that Plaintiff and the potential collective are not similarly situated because "[f]or client sites that are union organized, regular full-time employees do not receive health and welfare payments" is a red herring. *See* ECF No. 56 (Def. Opp. to Notice) at 6.[1] As Plaintiff stated in her Motion for Court-Authorized Fair Labor Standards Act Opt-In Notice ("Motion for Notice") (ECF No. 34), Plaintiff requests notice be sent to the following employees:

> All current and former hourly employees who during the prior three years worked for Defendant over forty (40) hours in one or more workweeks and who in the same workweeks were paid an hourly health and welfare payment by Defendant ("Collective Members").

Any regular full-time employees who did *not* receive health and welfare payments paid directly to them do not defeat the homogeneity of the potential collective, those employees are simply not part of the collective.

Defendant does not challenge that employees who meet the collective definition are similarly situated. Plaintiff submitted seven declarations from Plaintiff and opt-in plaintiffs showing that Plaintiff, opt-in plaintiffs, and potential collective members were all subject to Defendant's uniform policy and practice of failing to include health and welfare payments paid directly to them

---

[1] Defendant's statement is not even accurate. While employees working under the BOMA CBA do not receive health and welfare payments paid directly to them, ECF No. 56, Ex. 1 at Ex. B, Article XII, employees working under the CTA CBA are entitled to "a payment of five dollars and thirty-three cents ($5.33) per hour for all hours worked added to their regular rate of pay for coverage of their Health and Welfare costs." ECF No. 56, Ex. 1 at Ex. A, Article XI, § 7; *see also*, ECF No. 35-1, at Ex. E (Decl. of Yashica Mackey and Earnings Statement showing health and welfare benefit paid directly to her).

in the calculation of their overtime pay. ECF No. 35-1, Ex. A-G. These declarations are sufficient to meet the lenient standard for step-one notice under the FLSA. *See Shumate v. Forsage, Inc.*, No. 24 Civ. 931, 2025 WL 744155, at *2 (N.D. Ill. Mar. 9, 2025) (affidavits of three drivers indicating they and other drivers were subject to similar conditions met low bar for step-one notice). Plaintiff and the potential collective are similarly situated because (1) they all worked over forty (40) hours in at least one individual workweek; (2) they all received a health and welfare benefit paid directly to them; and (3) they did not have the health and welfare payment factored into their regular rate of pay for the purposes of calculating overtime wages.

**B.    Notice Should Be Issued to Non-Union Members.**

Defendant concedes that notice should be issued to non-union employees who meet the collective definition. *See* ECF No. 56 at 1-2.[2] Because the non-union member employees who worked over forty (40) hours in one or more individual workweeks and were paid a health and welfare benefit directly to them are similarly situated to Plaintiff, notice should be issued to the non-union member employees.

**C.    Notice Should be Issued to Union Members.**

1.    *Bigger* Does Not Apply to Arbitration Provisions in CBAs.

Defendant relies on *Bigger v. Facebook*, 947 F.3d 1043 (7th Cir. 2020) to argue that notice cannot be issued to employees working under the CTA and BOMA CBAs unless Plaintiff successfully contests the existence and validity of the arbitration provisions in those CBAs. *See* ECF No. 56 at 5-6. Defendant is wrong. *Bigger* does not govern arbitration provisions in CBAs. *Millings v. Transdev Servs., Inc.*, 2023 WL 6541318, at *7. Rather, as explained *infra* at Section

---

[2] In its response, Defendant states that it opposes notice for only two reasons: (1) the notice recipients include union members who Defendant contends are subject to two CBAs that prohibit them from bringing FLSA claims in court; and (2) the method of notice is overbroad. *See* ECF No. 56 at 1-2.

II.C.4, a CBA's mandatory arbitration provision only precludes employees from pursuing their statutory claims in court where the arbitration provision uses "clear and unmistakable" language requiring those employees to arbitrate their specific statutory claims. *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1134 (7th Cir. 2017). Because the arbitration provisions at issue here are contained within the CTA and BOMA CBAs, *Bigger* does not apply.

2.     <u>Even if *Bigger* Applied, Defendant Did Not Meet Its Evidentiary Burden.</u>

Even assuming *Bigger* applied to CBA arbitration provisions—which it does not—Defendant failed to meet its evidentiary burden under *Bigger* to specifically identify **each** potential collective member it claims are signatories to the CBAs and demonstrate that the arbitration provisions in the CTA and BOMA CBAs cover their FLSA claims. *See Bigger*, 947 F.3d at 1050.

The Seventh Circuit in *Bigger* held that "a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action." *Id.* Under *Bigger*, where a Defendant asserts an arbitration provision restricts an employee's ability to pursue their claims in court, and a plaintiff contests those assertions, "[t]he employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for **each employee** it seeks to exclude from receiving notice." *Id.* (emphasis added). "[I]f the employer does not prove that an employee entered a valid arbitration agreement, then the court may authorize notice to that employee" so long as "the employee is otherwise an appropriate notice recipient." *Id.*

Here, Plaintiff made clear that she contests the applicability of the BOMA and CTA CBA grievance and arbitration provisions to potential collective members' FLSA claims in her opposition to Defendant's motion to dismiss. *See* ECF No. 26 at 6-12. Thus, the burden shifted to Defendant to identify **each** potential collective member it contends are signatories to the arbitration provisions and demonstrate that those provisions require them to arbitrate their FLSA claims. But

4

Defendant failed to do this. Defendant has not identified the number of potential collective members that it claims are bound by either arbitration provision, and failed to identify the total number of employees it contends are bound by either CBA. *See* ECF No. 56 at 5-6.

Under *Bigger*, Defendant must persuade and prove to the Court that the grievance and arbitration provisions apply to each individual employee, are valid, and cover the dispute. 947 F.3d at 1050. *Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 932 (N.D. Ill. 2022) (allowing notice where defendant provided sampling of arbitration agreements signed by eight employees and empty assurances that the agreements also applied to additional 150 employees because the court is not required to "simply take an employer at its word") (quoting *Bigger*, 947 F.3d at 1050-51).

        3.     <ins>Defendant Waived Any Argument that Potential Collective Members' FLSA Claims Are "Clearly and Unmistakably" Covered by the CBA Arbitration Provisions.</ins>

Defendant's opposition also fails to make any argument as to *why* either CBA bars employees from litigating their FLSA claims in court. *See* ECF No. 56 at 5-6. Instead, Defendant just attaches the CBAs to its opposition papers and states that the CBAs "include an arbitration provision that effectively prohibits union members from participating in class or collective actions." ECF No. 56 at 3. This statement, without legal analysis or citation to the demanding "clear and unmistakable" standard is a waiver of the argument. *Willard v. Tropicana Mfg. Co., Inc.*, 557 F. Supp. 3d 814, 834 (N.D. Ill. Dec. 30, 2021) (a party's failure to raise an argument results in waiver of that argument); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("The obligation to raise the relevant arguments rests squarely with the parties, because . . .[o]ur system of justice is adversarial [and] our judges are busy people" thus, "a party waives an argument by failing to make it before the district court").

A finding of waiver is especially appropriate here because Plaintiff previously alerted Defendant that the "clear and unmistakable" standard is the correct legal framework for analyzing

CBA arbitration provisions in her Response in Opposition to Defendant's Motion to Dismiss. *See* ECF No. 26 at 6-12. Defendant was therefore on notice that any arbitration argument would need to satisfy this exacting standard, yet Defendant chose not to address it at all in their opposition. Regardless, neither CBA meets this standard.

4.     <u>The CBAs Do Not "Clearly and Unmistakably" Waive Potential Collective Members' Rights to Pursue FLSA Claims in Court.</u>

As the Supreme Court recognized, while an arbitration agreement contained in a CBA may waive an employee's right to bring statutory claims in court, it must do so explicitly. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009). An arbitration agreement within a CBA only waives an employee's right to pursue their statutory claims in a judicial forum where the language of the agreement is "clear and unmistakable" as to that waiver. *Vega*, 856 F.3d at 1134. The "clear and unmistakable" standard is a high bar. *Cloutier v. GoJet Airlines, LLC*, 996 F.3d 426, 439 (7th Cir. 2021). "Such a standard ensures that the employees' right to bring statutory claims in court is not waived by operation of confusing, very general arbitration clauses." *Moore v. Lear Corp.*, 664 F. Supp. 3d 881, 890 (N.D. Ind. 2023) (cleaned up).

a.     *The CTA Collective Bargaining Agreement.*

i.     *Statutory Claims Do Not Fall Under the CTA CBA Definition of Grievance.*

Article XI of the CTA CBA requires that "grievances" be arbitrated. ECF No. 56, Ex. 1 at Ex. A, Article XI. Section 1 of Article XI narrowly defines a grievance as "a dispute between the Employer and an employee regarding the application of the *Employer's rules and regulations or the meaning or application of any provision of this Agreement*, but not involving any change in or addition to such provisions." *Id.* (emphasis added). Because FLSA claims arise under federal law, and not under Defendant's rules and regulations or the CTA CBA terms, they fall outside of the CTA CBA's definition of "grievance." They are not subject to arbitration. *See Vega*, 856 F.3d at

6

1133-34 (recognizing that "an employee's statutory rights are distinct from his contractual rights and as such must be analyzed separately with respect to his right to enforce them in court); *Manuele v. Cty. of Springfield, Ill.*, 718 F. Supp. 2d 939, 947 (C.D. Ill. 2010) (FLSA claims did not fall under mandatory arbitration provision where CBA defined grievance as "a dispute over the meaning or terms of the CBA itself").[3]

   ii. *The CTA CBA Does Not Explicitly Reference FLSA Claims.*

  Further, "[t]he cases upholding the CBA language as clear and unmistakable are cases in which there is an express reference to the statutory claims and a requirement that such claims be submitted to the grievance process." *Moore*, 664 F. Supp. 3d at 892. As the Seventh Circuit recognized, "[i]t is neither unattainable nor unreasonable to expect parties to a collective bargaining agreement to clearly state those statutory claims that they intend to confine to arbitration.")। *Cloutier*, 996 F.3d at 436. For instance, the Supreme Court in *14 Penn Plaza*, found a "clear and unmistakable" agreement to arbitrate Title VII claims where the CBA explicitly stated that "claims made pursuant to Title VII of the Civil Rights Act, the Americans with Disabilities Act" and other similar federal and state laws "shall be subject to the grievance and arbitration procedure…as the sole and exclusive remedy for violations." 556 U.S. 247 at 252, 258-59.

  In contrast, courts do not find a "clear and unmistakable" waiver where a CBA does not identify the specific statutes being confined to the grievance and arbitration process. In *Vega*, the Seventh Circuit reversed the district court's decision that Vega was required to arbitrate his FLSA claim under the CBA grievance procedure because the CBA defined grievances to include "disputes

---

[3] *See also*, Wright *v. Univ. Mar. Serv. Corp.*, 525 U.S. 70, 81-82 (1998) (terms of seniority plan associated with CBA limited application of grievance provision to disputes related to the agreement so there was no clear and unmistakable waiver of right to bring ADA claim in court); *O'Brien v. Town of Agawam*, 350 F.3d 279, 285-86 (1st Cir. 2003) (there was no "clear and unmistakable" waiver of right to pursue FLSA claim in court where arbitration provisions in CBAs applied only to grievances, "defined as allegations that the Town *violated the CBA*.") (emphasis in original).

7

over pay, hours, or working conditions." 856 F.3d at 1135. In so doing, the Seventh Circuit concluded that "the district court did not consider whether the collective bargaining agreement requires Vega to resort to the grievance process when he is pursuing rights granted to him by the FLSA rather than the contract itself." *Id*. at 1134. The *Vega* court concluded that "[u]nder no sense of the phrase 'clear and unmistakable' c[ould] the agreement be read to compel an employee to resolve his rights under [the] FLSA through the grievance process" where the grievance and arbitration provisions in the CBA did not reference the FLSA. *Id*. at 1135.[4] Here, as in *Vega*, the CTA CBA contains no specific reference to the FLSA.

        iii.      The CTA CBA Contains Conflicting Provisions Regarding the Scope of Arbitrable Grievances, Defeating Any Claim of a "Clear and Unmistakable" Waiver of FLSA Rights

Even if Article XI, §7 of the CTA CBA could be read broadly to suggest that statutory wage claims might be subject to arbitration, that provision directly conflicts with the narrow definition of "grievance" in Article XI, §1, which limits arbitrable disputes to those "regarding the application of the Employer's rules and regulations or the meaning or application of any provision of this Agreement, but not involving any change in or addition to such provisions." ECF No. 56, Ex. 1 at Ex. A, Art. XI, §1.

---

[4] *See also Wright*, 525 U.S. at 80-81 (general arbitration clause "providing for arbitration of 'matters under dispute'" that "contain[ed] no explicit incorporation of statutory antidiscrimination requirements" did not "clearly and unmistakably" bar plaintiff from bringing ADA claim in court); *Cloutier*, 996 F.3d at 438-39 (no "clear and unmistakable" waiver of right to bring FMLA claims in court where the CBA "made no mention of 'claims made pursuant' to the FMLA nor suggested these (unmentioned) claims would be bound by [the] arbitration provisions"); *Rivers v. Lear Corp.*, No. 22 Civ. 107, 2023 WL 2645984, at *3-4, *8 (N.D. Ind. Mar. 27, 2023) (broad non-discrimination provision coupled with statement that "any and all disputes including interpretations of contract provisions arising under, out of, in connection with, or in relation to [the CBA] shall be subject to this grievance procedure", absent language that "specifically waives an employee's right to a judicial forum for Title VII claims" was not "clear and unmistakable" so plaintiff could pursue his Title VII claim in court).

8

This internal inconsistency is fatal under Supreme Court and Seventh Circuit precedent. The Court in *Wright* made clear that arbitration clauses in CBAs must meet a high bar: they must "clearly and unmistakably" waive the right to litigate statutory claims. 525 U.S. at 79-82. A CBA provision that is reasonably susceptible to competing interpretations does not meet this standard. Courts emphasize that any ambiguity in a CBA's arbitration provisions must be resolved against waiver of statutory rights. *See Cloutier,* 996 F.3d at 438-39 (arbitration clause failed clear and unmistakable standard because it was a general, "nondescript catch-all" provision ); *Moore*, 664 F. Supp. 3d at 890–92 (same); *Manuele*, 718 F. Supp. 2d at 947 (no waiver of FLSA claim where grievance clause was limited to disputes over meaning of the CBA). As the court in *Moore* explained, "[t]he cases upholding the CBA language as clear and unmistakable are cases in which there is an express reference to the statutory claims and a requirement that such claims be submitted to the grievance process." 664 F. Supp. 3d at 892.

Here, Article XI, §1 expressly limits the grievance process to disputes under the CBA or company policies. Article XI, §7 does not reconcile that language with the more restrictive definition in §1, nor does it incorporate or identify any specific statutory rights. This ambiguity must be construed against the employer and against a finding that employees have surrendered their right to pursue their FLSA claims in court. *Wright*, 525 U.S. at 79-82; *Vega*, 856 F.3d at 1135.

iv. *The Arbitration Provision in the CTA CBA Does Not Empower Arbitrators to Decide FLSA Claims*.

Article XI, § 4 of the CTA CBA severely restricts the arbitrator's authority to decide disputes between Defendant and its employees. *See* ECF No. 56, Ex. 1, at Ex. A, Art. XI, § 4. Article XI, § 4 states that:

> The impartial arbitrator shall not have the right to amend, modify, nullify, ignore, or add to the provisions of this Agreement. They shall consider and decide only the particular issue presented to them in writing by the Employer and the Union, and their decision and award shall be based solely upon their interpretation of the

9

meaning or application of the terms of this Agreement to the facts of the grievance presented.

"Since the arbitrator derives power from the CBA, the arbitrator 'has no general authority to invoke public laws that conflict with the bargain between the parties.'" *Castro v. Dart*, 483 F. Supp. 3d 564, 572 (N.D. Ill. 2020) (quoting *Ameren Ill. Co. v. Int'l Bhd. of Elec. Workers*, 906 F.3d 612, 617 (7th Cir. 2018)). Resolution of the FLSA claims in this case necessarily require the application and interpretation of federal law. Because the CTA CBA prohibits arbitrators from interpreting or applying anything outside of the terms of the CBA, requiring employees to arbitrate their FLSA claims would effectively bar them from exercising their rights under the FLSA. This kind of waiver of statutory claims is prohibited by Supreme Court precedent. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 745 (1981) (FLSA rights are independent of the collective bargaining process and cannot be waived through CBAs).

v.     *The Strict Time Limits to in the CTA CBA to Resolve Disputes Creates Impermissible Barriers to Bringing FLSA Claims.*

Article XI of the CTA CBA imposes strict time limits on employees for raising a grievance and moving through the grievance process. *See* ECF No. 56, Ex. 1 at Ex. A, Art. XI, §§ 3, 6. Section 3 of the grievance process requires that "[a] written statement of grievance must be furnished to the Employer's Branch Manager or his/her designee, within thirty (30) days following the occurrence of the subject matter of the grievance." *Id.* at Art. XI, § 3. If applied to FLSA claims, Section 3 operates to limit the statute of limitations from three years for willful violations of the FLSA to only 30 days. This would constitute an invalid waiver of putative collective members' FLSA rights. *Boaz*

10

*v. FedEx Customer Info. Servs., Inc.*, 725 F.3d 603, 606-07 (6th Cir. 2013) (truncated six-month FLSA limitations period was impermissible).[5]

The mandatory grievance process in Section 3 also contains additional tight deadlines at each subsequent step of the grievance process ranging from ten to fifteen days to either settle the grievance or appeal to a different decisionmaker.[6] Missing any deadline in this compressed grievance process timeline bars employees from vindicating their statutory rights under the FLSA. The Supreme Court has already determined this kind of waiver is flatly impermissible. *See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945) (holding that FLSA rights are not waivable by contract); *Barrentine*, 450 U.S. at 745.

The Supreme Court has also made clear that while parties can agree to arbitrate statutory claims with the use of "clear and unmistakable" waiver language, parties cannot structure the arbitration process to effectively preclude statutory claims entirely. *See 14 Penn Plaza*, 556 U.S. at 265-66. Because enforcing the grievance and arbitration procedure against FLSA claims would result in a complete bar of those claims through procedural impossibility, the Court should not find a waiver of potential class members' right to bring their FLSA claims in court here.

      b.     *The BOMA Collective Bargaining Agreement.*

---

[5]    While appellate decisions are scant, numerous district courts nationwide have held that the FLSA statute of limitations cannot be waived in an employment agreement. *See Castellanos v. Raymours Furniture Co., Inc.*, 291 F. Supp. 3d 294, 299 (E.D.N.Y. 2018); *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F. Supp. 2d 682, 689-91 (S.D. Tex. 2013); *Taylor v. Am. Income Life Ins. Co.*, No. 13 Civ. 31, 2013 WL 2087359, at *3 (N.D. Ohio May 14, 2013); *Pruiett v. W. End Rests., LLC*, No. 11 Civ. 00747, 2011 WL 5520969, at *5 (M.D. Tenn. Nov. 14, 2011); *Hackler v. R.T. Moore Co.*, No. 17 Civ. 262, 2017 WL 6535856, at *2-4 (M.D. Fla. Dec. 21, 2017).

[6]    Pursuant to Section 3 of Article XI, if the grievance is not settled at Step 1 of the process, there is a 15-day window to appeal to the Area Vice President. ECF No. 56, Ex. 1 at Ex. A, Art. XI, § 3. If not settled at Step 2, there is a 15-day window to appeal to the Regional VP of HR. *Id.* Under Step 4, there is only ten working days to request an arbitration, and another ten working days to select an arbitrator. *Id.*

The BOMA CBA merely requires arbitration of disputes "aris[ing] under this Agreement." ECF No. 56, Ex. 1 at Ex. B, (BOMA CBA), Art. XVIII. This is precisely the type of general language that *Vega* held insufficient to require arbitration of statutory claims. The BOMA CBA makes no specific reference to the FLSA. Under *Vega*, such silence is fatal to any argument that the BOMA CBA requires arbitration of putative collective members' FLSA claims. *See Cloutier*, 996 F.3d at 436 (no "clear and unmistakable" waiver where CBA required arbitration of disputes arising under the terms of the CBA).[7]

Defendant also incorrectly asserts, without argument, that the BOMA CBA "effectively prohibits union members from participating in class or collective actions." ECF No. 56 at 3 (citing ECF No. 56, Ex. 1, at Ex. B, Art. XVIII). But Article XVIII of the BOMA CBA contains no reference to class or collective actions. Further cutting against Defendant's contention that potential collective members' FLSA claims are barred in this forum by the existence of a collective action waiver, Section 1 of Article XVIII provides guidance on how the grievance and arbitration provisions apply to groups of employees. *See* ECF No. 56, Ex. 1 at Ex. B, Art. XVIII ("If a group of employees are involved in the grievance, the steward, if applicable, and the Union Grievance Representative shall represent the employees."). Thus, Defendant's argument that the BOMA CBA "effectively prohibits union members from participating in class or collective actions" is wrong. Just as there is nothing in the BOMA CBA that prevents potential collective members from litigating their FLSA claims in court, there is nothing in the BOMA CBA that forecloses employees from bringing their claims collectively.

---

[7] *See also Moore*, 664 F. Supp. 3d at 892 (grievance provision requiring arbitration of any and all claims arising out of the CBA did not clearly and unmistakably waive plaintiff's right to bring Title VII claims in court where "[n]othing about th[e] language expressly refer[ed] to statutory claims" and "there is no language. . .that specifically waives an employee's right to a judicial forum for Title VII claims.").

**D. Plaintiff's Proposed Method of Notice is Widely Accepted and Should Be Approved as Proposed.[8]**

1. Courts Routinely Allow Notice by U.S. Mail, Email, and Text Message.

"It is common to permit distribution of FLSA opt-in notices by mail, email, and text message". *Nunez Rivera v. Plateia, Inc.*, 762 F. Supp. 3d 669, 701 (N.D. Ill. 2025); *see also Campbell*, 623 F. Supp. 3d at 935 (notice by email is now "the norm" and notice via text message is "increasingly common"). *See* ECF No. 35 at 10, n. 1 (collecting cases).

To facilitate notice, courts routinely order employers to provide email addresses and phone numbers for their employees. *See Shumate*, 2025 WL 744155, at *2. Multiple courts in this district have rejected privacy objections like Defendant's, concluding "any moderate intrusion caused by such a text message or email is outweighed by the interest in apprising all potential class members of this action." *Campbell*, 623 F. Supp. 3d at 935 (cleaned up); *Dennis v. Greatland Home Health Servs., Inc.*, 438 F. Supp. 3d 898, 902 (N.D. Ill. 2020) ("any moderate intrusion caused by such a text message is outweighed by the interest in apprising all potential class members of this action").

Courts have similarly rejected arguments that notice should not be issued by email and text message because electronic forms of delivery may be easily manipulated or modified. *See, e.g.*, *Watson v. Jimmy John's, LLC*, No. 15 Civ. 6010, 2016 WL 106333, at *1 (N.D. Ill. Jan. 5, 2016) (finding "the likelihood that unauthorized reproduction or dissemination of manipulated notices will disrupt the litigation is slight" and noting that "the possibility that notice could be altered and reproduced is certainly not unique to the electronic form of delivery"). The methods of notice transmission that Plaintiff proposes are widely accepted and should be approved by this Court.

---

[8] In its response to Plaintiff's Motion for Notice, Defendant presented no challenge to the substance of Plaintiff's proposed notice, the substance and method of dissemination of Plaintiff's proposed reminder notice, or the 60-day opt-in period. *See* ECF No. 56. Because there is no dispute as to those aspects of notice, Plaintiff only addresses Defendant's objections to the method of transmitting notice.

13

2.    Courts Routinely Allow the Use of Electronic Notice & Opt-In Mechanisms.

Defendant asserts, without argument or citation to any authority, that Plaintiff's requests to post notice on a standalone website and include a QR code on the printed notice linked to the notice website to allow electronic submission of consent forms "is an unnecessary attempt to foment litigation" that "would very likely cause confusion and lead to abuse." ECF No. 56 at 8. This assertion has no merit. The use of electronic notice and opt-in mechanisms further the broad remedial purposes of the FLSA by ensuring putative collective members will receive "accurate and timely notice" of this action. *See Hoffman La-Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Courts routinely allow notice to be posted on a standalone website. *See, e.g.*, *Burr v. Loadsmart, Inc.*, 759 F. Supp. 3d 881, 890 (N.D. Ill. 2024) (authorizing submission of consent forms via electronic website); *Calvache v. Faith Church of Lafayette, Inc.*, No. 24 Civ. 53, 2025 WL 1633919, at *4 (N.D. Ind. June 5, 2025) (concluding there is "no reason the notice shouldn't be available online, with an option to complete it online" in this "age of online information"). And multiple courts have recently recognized that the inclusion of QR codes on paper notices that link to a notice website where putative collective members may submit their consent to join forms electronically "may further facilitate the opt-in process." *Myers v. Gilead Sci., Inc.*, No. 25 Civ. 02668, 2025 WL 870357, at *5 (N.D. Cal. Mar. 20, 2025).[9] Plaintiff's request to post notice on a website so potential collective members may submit consent forms electronically and include a QR code on the paper notice linking to the website is uncontroversial and should be approved.

3.    Plaintiff Is Entitled to Job Title and Job Site Information for Potential Collective Members.

[9] *See also Li v. Escape Nails & Spa, LLC*, No. 23 Civ. 1487, 2024 WL 3742764, at *2 (D. Md. Aug. 9, 2024) (allowing QR code linked to notice posted on plaintiff's counsel's website and printed on notice envelope); *O'Brien v. Smoothstack, Inc.*, No. 23 Civ. 491, 2024 WL 1356674, at *9 (E.D. Va. Mar. 28, 2024) (allowing QR code linked to standalone website for potential collective members to access consent to join form electronically); *Costa v. Apple, Inc.*, No. 23 Civ. 01353, 2023 WL 8101980, at *7, n. 3 (N.D. Cal. Nov. 21, 2023) (allowing QR code in notice and reminder linked to electronic consent forms).

14

Courts routinely order production of job titles and work locations because this information is essential to effective notice administration and ensuring all similarly situated employees receive notice. *Ford v. U.S. Foods, Inc.*, No. 19 Civ. 05967, 2020 WL 5979553, at *4 (N.D. Ill. Oct. 8, 2020); *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1140 (N.D. Ill. 2017). Job titles and work sites are standard employee data that any employer maintains in ordinary payroll and HR systems—particularly a security company like Defendant that must track employee assignments to client locations for billing and scheduling purposes. Defendant's claim that compiling this basic employment information requires 30 additional days is implausible and needlessly delays notice while the statute of limitations continues to run on potential collective members' claims.[10] The requested information poses no privacy concerns, as job titles and work locations are basic employment data routinely produced in employment litigation. Fourteen days is more than sufficient for Defendant to produce this information, and courts regularly order production within this timeframe. *Williams v. TopHat Logs. Sol., LLC*, 703 F. Supp. 3d 913, (N.D. Ill. 2023); *Owens v. GHL Cap. Enter., Inc.*, No. 16 Civ. 1109, 2017 WL 2985600, at *5 (S.D. Ill. July 13, 2017).

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant her Motion for Step-One Notice and enter an Order (1) requiring Defendant to produce names, last known addresses, email addresses, phone numbers, employment dates, job titles, and job sites for potential collective members; (2) authorizing issuance of notice by U.S. Mail, email, and text message; (3) allowing Plaintiff to send a reminder notice; and (4) permitting Plaintiff to create a website and QR code so consent forms may be submitted electronically.

---

[10] The statute of limitations on potential collective members' FLSA claims were tolled from January 2, 2025 through May 7, 2025, when the Court denied Defendant's motion to dismiss. ECF No. 41.

Dated:  June 18, 2025

Respectfully submitted,

s/*Douglas M. Werman*

Douglas M. Werman - dwerman@flsalaw.com
Maureen A. Salas - msalas@flsalaw.com
Anne Kramer - akramer@flsalaw.com
**Werman Salas P.C.**
77 W. Washington St. Suite 1402
Chicago, IL 60602
Phone: (312) 419-1008
Fax: (312) 419-1025

*Attorneys for Plaintiff and the Potential Collective*

16